IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| ANTHONY HAMMOND MURPHY ) | |
| ) | |
| Plaintiff, ) | Civil Action No. 1:20-cv-58-SPB |
| v. ) | |
| ) | |
| HUMBOLT CLOTHING CO., INC., ) | |
| ) | |
| Defendant. ) | |

**MEMORANDUM OPINION**

Pending before the Court in the above-captioned matter is a motion by Humbolt Clothing Co., Inc. ("Defendant") to dismiss the complaint of Anthony Hammond Murphy ("Plaintiff") for lack of personal jurisdiction and/or lack of proper venue. For the reasons that follow, the Defendant's motion will be denied but the denial will be without prejudice insofar as it is predicated on a challenge to the Court's personal jurisdiction.

## I.   Background

Plaintiff is a citizen of Pennsylvania who is legally blind and who advocates for others with visual impairments. Compl., ECF No. 1, ¶¶1-2. As a result of his blindness, Plaintiff relies on screen reader software to access electronic information. Id. ¶3.

Defendant is a California corporation engaged in the business of selling clothing apparel and accessories on a retail basis. Compl. ¶¶5, 33. Defendant operates brick-and-mortar storefronts in California and has its principal place of business there as well. Id. Much of Defendant's consumer business is done entirely online through its website www.humboldtclothing.com. Id. ¶6.

At some unspecified point in time, Plaintiff attempted to access Defendant's website from his residence in Erie, Pennsylvania. He was unable to do so, however, because Defendant's website is largely incompatible with screen reader programs like the one used by Plaintiff. Compl. ¶¶8, 29, 38, 41.

On March 23, 2020, Plaintiff filed the instant lawsuit against the Defendant for alleged violations of Title III of the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12181 - 12189. ECF No. 1. Plaintiff avers that the violations occurred when Defendant failed to make its Website available in a manner compatible with screen reader programs, thereby "depriv[ing] individuals who are partially sighted, visually impaired or totally blind the benefits of the goods, content, and services of its online store . . . ." Compl. ¶10. Plaintiff requests declaratory and injunctive relief as well as an award of damages, costs of suit, and attorneys' fees.

On August 11, 2020, Defendant filed the pending motion to dismiss. ECF Nos. 6. As grounds for dismissal, Defendant asserts a lack of personal jurisdiction as well as improper venue. ECF Nos. 6 and 11. Plaintiff filed his brief in opposition to the motion on August 28, 2020. ECF No. 12. At this point, the issues are sufficiently joined and the matter is ripe for disposition.

## II.    Defendant's Motion to Dismiss Under Fed. R. Civ. P. 12(b)(2)

*A. Standard of Review*

A motion to dismiss for lack of personal jurisdiction is governed by Federal Rule of Civil Procedure 12(b)(2). "When a defendant raises the defense of the court's lack of personal jurisdiction, the burden falls upon the plaintiff to come forward with sufficient facts to establish that jurisdiction is proper." *Mellon Bank (East) PSFS, Nat. Ass'n v. Farino*, 960 F.2d

1217, 1223 (3d Cir. 1992); *Metcalfe v. Renaissance Marine, Inc*., 566 F.3d 324, 330 (3d Cir. 2009).  "[W]hen the court does not hold an evidentiary hearing on the motion to dismiss, the plaintiff need only establish a prima facie case of personal jurisdiction and the plaintiff is entitled to have its allegations taken as true and all factual disputes drawn in its favor." *Miller Yacht Sales, Inc. v. Smith*, 384 F.3d 93, 97 (3d Cir. 2004); *see Toys "R" Us, Inc. v. Step Two, S.A.,* 318 F.3d 446, 457 (3d Cir. 2003).  If the plaintiff establishes a prima facie case of personal jurisdiction, the burden then shifts to the defendant to demonstrate that the court's exercising of personal jurisdiction would be unreasonable. *O'Connor v. Sandy Lane Hotel Co., Ltd*., 496 F.3d 312, 324 (3d Cir. 2007).

"Although the plaintiff bears the burden of demonstrating facts that support personal jurisdiction, *Pinker* [*v. Roche Holdings, Ltd*., 292 F.3d 361, 368 (3d Cir. 2002)], courts are to assist the plaintiff by allowing jurisdictional discovery unless the plaintiff's claim is 'clearly frivolous.'" *Toys "R" Us*, 318 F.3d at 456 (quoting *Massachusetts School of Law at Andover, Inc. v. American Bar Ass'n*, 107 F.3d 1026, 1042 (3d Cir. 1997)). "If a plaintiff presents factual allegations that suggest 'with reasonable particularity' the possible existence of the requisite 'contacts between [the party] and the forum state,' the plaintiff's right to conduct jurisdictional discovery should be sustained." *Id*. at 456 (quoting *Mellon Bank (East),* 960 F.2d at 1223) (alteration in the original).

B.  *Legal Principles Governing Personal Jurisdiction*

"[T]o exercise personal jurisdiction over a defendant, a federal court sitting in diversity must undertake a two-step inquiry.  First, the court must apply the relevant state long-arm statute to see if it permits the exercise of personal jurisdiction; then, the court must apply the precepts of the Due Process Clause of the Constitution." *IMO Indus., Inc. v. Kiekert AG*, 155 F.3d 254, 258-

59 (3d Cir. 1998).  In Pennsylvania, the two steps of the inquiry merge, because Pennsylvania's long-arm statute allows the court to exercise jurisdiction "to the fullest extent allowed under the Constitution of the United States and may be based on the most minimum contact with this Commonwealth allowed under the Constitution of the United States." 42 Pa. Cons. Stat. Ann. §5322(b); *Mellon Bank (East),* 960 F.2d at 1221.  Personal jurisdiction is therefore proper if due process is satisfied.

"Due process requires that the defendant have 'minimum contacts' in the forum state and that the exercise of jurisdiction comport with 'traditional notions of fair play and substantial justice.'" *Remick v. Manfredy*, 238 F.3d 248, 255 (3d Cir. 2001) (quoting *International Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)).  The relevant minimum contacts must be based on "'some act by which the defendant purposefully avails itself of the privilege of conducting activities within Pennsylvania, thus invoking the benefits and protections of its law.'" *Id*. (quoting *Asahi Metal Indus. Co. v. Superior Court*, 480 U.S. 102, 109 (1987)). "Once it has been decided that a defendant purposefully established minimum contacts within the forum State, these contacts may be considered in light of other factors to determine whether the assertion of personal jurisdiction would comport with 'fair play and substantial justice.'" *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 476 (1985) (quoting *Int'l Shoe Co*., 326 U.S. at 320).

Personal jurisdiction may be exercised under two distinct theories, depending upon a defendant's general or claim-specific contacts with the forum. *Remick*, 238 F.3d at 255. "General jurisdiction is based upon the defendant's 'continuous and systematic' contacts with the forum and exists even if the plaintiff's cause of action arises from the defendant's non-forum related activities." *Id*. (citing *Vetrotex Certainteed Corp. v. Consol. Fiber Glass Prod. Co*., 75 F.3d 147, 151 n. 3 (3d Cir. 1996) (citations omitted)). General jurisdiction exists when the defendant's

affiliations with a forum are "so continuous and systematic as to render [it] essentially at home in the forum State." *Daimler AG v. Bauman*, 571 U.S. 117, 127 (2014) (quotations and citation omitted) (alteration in the original).

Specific jurisdiction, on the other hand, is present only if the plaintiff's cause of action arises out of a defendant's forum-related activities, such that the defendant "'should reasonably anticipate being haled into court'" in that forum. *Vetrotex*, 75 F.3d at 151 (quoting *World–Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980)).  This involves a fact-intensive inquiry consisting of three parts: first, the defendant must have purposefully directed its activities at the forum; second, the litigation must arise out of or relate to at least one of those activities; finally, if the prior two requirements are satisfied, the court may consider whether the assertion of jurisdiction otherwise comports with traditional notions of fair play and substantial justice. *O'Connor*, 496 F.3d at 317.  To establish the "threshold requirement" of "purposeful[ ] avail[ment]," the defendant need not have physically entered the forum state, but its contacts must amount to "a deliberate targeting of the forum."  *D'Jamoos ex rel. Estate of Weingeroff v. Pilatus Aircraft Ltd.*, 566 F.3d 94, 103 (3d Cir. 2009) (citations and internal quotation marks omitted). "The unilateral activity of those who claim some relationship with a nonresident defendant is insufficient." *Id.*  (citation and internal quotation marks omitted).

When a defendant's alleged contact with the forum state is through the internet, the court must determine "whether a defendant established minimum contacts through cyberspace." *Ackourey v. Sonellas Custom Tailors*, 573 F. App'x 208, 211–12 (3d Cir. 2014).  To that end, courts consider the sliding scale approach set forth in *Zippo Manufacturing Company  v. Zippo Dot Com, Incorporated*, 952 F. Supp. 1119, 1123–24 (W.D. Pa. 1997).  *See Toys "R" Us*, 318 F.3d at 452 (referring to *Zippo* as "a seminal authority regarding personal jurisdiction based upon

the operation of an Internet web site"). Under the *Zippo* approach, the likelihood of establishing personal jurisdiction is "directly proportionate to the nature and quality of commercial activity that an entity conducts over the Internet." *See Zippo,* 952 F. Supp. at 1124.  On one end of the scale (where personal jurisdiction can be established) are "situations where a defendant uses an interactive commercial website to actively transact business with residents of the forum state," *Ackourey*, 573 F. App'x at 211; at the other end of the scale (where personal jurisdiction is lacking) are "situations where a passive website merely provides information that is accessible to users in the forum state). *Id*. When a case falls between these two extremes, courts examine "'the level of interactivity and commercial nature of the exchange of information that occurs on the Web site.'" *Id*. at 211-12 (quoting *Zippo*, 952 F. Supp. at 1124, citing *Toys "R" Us*, 318 F.3d at 452).

Our Court of Appeals has emphasized, however, that "the mere operation of a commercially interactive web site should not subject the operator to jurisdiction anywhere in the world." *Toys "R" Us,* 318 F.3d at 454.  Instead, "there must be evidence that the defendant 'purposefully availed' itself of conducting activity in the forum state, by directly targeting its web site to the state, knowingly interacting with residents of the forum state via its web site, or through sufficient other related contacts." *Id*.  For example, "non-internet contacts such as serial business trips to the forum state, telephone and fax communications directed to the forum state, purchase contracts with forum state residents, contracts that apply the law of the forum state, and advertisements in local newspapers, may form part of the 'something more' needed to establish personal jurisdiction." *Id*. at 453–454.

In *Zippo*, for instance, personal jurisdiction existed where the defendant "ha[d] sold passwords to approximately 3,000 subscribers in Pennsylvania and entered into seven contracts

with Internet access providers to furnish its services to their customers in Pennsylvania." *See* 952 F. Supp. at 1126. The court in *Zippo* rejected the idea that the defendant's contacts with Pennsylvania residents were "fortuitous" and observed that the defendant had "repeatedly and consciously chose[n] to process Pennsylvania residents' applications and to assign them passwords . . . [knowing] that the result of these contracts would be the transmission of electronic messages into Pennsylvania." *Id*. The court noted that, "if [the defendant] had not wanted to be amenable to jurisdiction in Pennsylvania, the solution would have been simple -- it could have chosen not to sell its services to Pennsylvania residents." *Id.* at 1126-27. Moreover, the court found that the defendant's forum-related contacts were "substantial" even though Pennsylvania residents comprised only two percent of the defendant's subscribers. *Id.* at 1127 (noting that "the Supreme Court has made clear that even a single contact can be sufficient," and "[t]he test has always focused on the 'nature and quality' of the contacts with the forum and not the quantity of those contacts") (citing *McGee v. Int'l Life Ins. Co*., 355 U.S. 220, 223 (1957) and quoting *Int'l Shoe*, 326 U.S. at 320).

In *Square D Co. v. Scott Elec. Co*., No. CIV.A. 06-00459, 2008 WL 4462298, at *8 (W.D. Pa. Sept. 30, 2008), the relevant defendants were a company engaged in selling industrial electrical supplies and its sole employee/majority shareholder. The company had utilized an "interactive" website "that allowed customers to take the first step in an ordering process that could be completed with one phone call or e-mail." 2008 WL 4462298 at *11. Moreover, the company had conducted $10,238.25 in sales with twenty-four (24) Pennsylvania customers. *Id*. at *9. Although these transactions constituted less than one percent of the company's total sales, the court found them sufficient to establish specific personal jurisdiction. *Id*. "By knowingly selling and shipping a product that is at issue in this litigation to a customer [in] Pennsylvania,"

the court concluded, "the Moving Defendants purposefully availed themselves of the laws and privileges of this forum." *Id.* at *11.

Similarly, in *Willyoung v. Colorado Custom Hardware*, *Inc*. the court expressed "little doubt that [the defendant] BGM purposefully availed itself of the opportunity to conduct business with Pennsylvania residents via its web site." *Id.* at *12.  The website in question was "interactive in the sense that it allows users to purchase merchandise online." *Id.*  Further, jurisdictional discovery had revealed that, between 2006 and 2007, BMG completed 211 orders and conducted $41,566.05 in sales involving Pennsylvania customers. Thus, the court found it "clear that BGM 'repeatedly and consciously chose to process Pennsylvania residents' applications' for orders of its goods." *Id.* (quoting *Toys "R" Us,* 318 F.3d at 452.  The defendant's "'purposeful availment' of the opportunity to engage in commercial activity within this Commonwealth" was sufficient to establish personal jurisdiction, notwithstanding the fact that its Pennsylvania sales represented only a "small fraction" of its overall internet sales. *Id*.

The court reached a similar conclusion again in *R.Q.C. Ltd. v. JKM Enterprises, Inc*., No. 1:13-CV-307, 2014 WL 4792148, at *5 (W.D. Pa. Sept. 23, 2014) -- a case cited by Plaintiff in this action.  In *R.Q.C.,* the defendant's interactive website allowed customers to view merchandise, contact the seller for more information, submit an application to purchase merchandise on credit, and initiate the ordering process by utilizing an order form on the website. *Id.* at *5.  The court found "ample evidence" of the type of "intentional interaction with the forum state" that is required to establish personal jurisdiction.  *Id*.  Noting that the company had received $55,000 in sales revenue from Pennsylvania residents over a five-year period, the court deduced that, "[a]t any probable price point, this figure represents thousands of sales of charms to Pennsylvania residents." *Id.*  One of the plaintiff's representatives further attested to

having encountered a display of the defendant's products in a Pennsylvania retail jewelry store. *Id*. Based on this evidence, the court found it "apparent" that the defendant had "'repeatedly and consciously chose[n] to process Pennsylvania residents' applications' for orders of its products." *Id*. (quoting *Toys "R" Us*, 318 F.3d at 452). The court concluded that personal jurisdiction existed notwithstanding the fact that only 2.2 percent of the defendant's total sales revenue was attributable to its sales to Pennsylvania residents. *See id.* (noting that "[c]ourts have repeatedly rejected similar arguments" and citing authority).

Other district courts within this circuit have similarly found the requisite minimum contacts based upon a defendant's use of a website to transact sales within the forum state. *See, e.g., TRE Services, Inc. v. U.S. Bellows, Inc*., No. 2:12–cv–00663, 2012 WL 2872830, *4–5 and n.6 (W.D. Pa. July 12, 2012) (personal jurisdiction existed based upon the defendant's use of a commercially interactive website to conduct business in Pennsylvania that amounted to 2.1 percent of its annual revenue); *Gourmet Video, Inc. v. Alpha Blue Archives, Inc*., Civil Action No. 08–2158, 2008 WL 4755350, *5-6 (D.N.J. Oct.29, 2008) (defendants were subject to personal jurisdiction in New Jersey where they used an interactive website to conduct approximately two percent of their sales to New Jersey residents); *L'Athene, Inc. v. EarthSpring LLC*, 570 F. Supp. 2d 588, 593-94 (D. Del. 2008) (personal jurisdiction existed in Delaware where defendants operated a website accessible in Delaware, received orders and payments from customers in Delaware and shipped their products to Delaware, even though Delaware sales accounted for less than one percent of defendants' annual revenues).

By contrast, a sale within the forum state that is "orchestrated" by the plaintiff for the purpose of litigation does not show the type of "purposeful availment" that is necessary for the existence of personal jurisdiction. In *Toys "R" Us,* for example, the court opined that the two

sales transactions initiated by the plaintiff "appear[ed] to be the kind of 'fortuitous,' 'random,' and 'attenuated' contacts that the Supreme Court has held insufficient to warrant the exercise of jurisdiction." 318 F.3d at 454-55 (quoting *Burger King Corp.*, 471 U.S. at 475).  Similarly, in *Utz Quality Foods, LLC v. Dirty S. BBQ Co., LLC*, No. CV 20-1146, 2020 WL 4334903 (E.D. Pa. July 28, 2020), the court found that personal jurisdiction could not be predicated upon a sale that was "blatantly orchestrated" by the plaintiff's attorney three days before suit was filed. *Id.* at *2.

### C. Discussion

In the instant case, no assertion is made that this Court has general jurisdiction over the Defendant.  Thus, our sole inquiry is whether specific personal jurisdiction exists.

To that end, the Court notes that there is no apparent dispute about the fact that the Defendant operates an interactive website that allows sales to be conducted entirely online.  *See* ECF No. 12-2, ¶¶4-12.  Instead, Defendant argues that there is no evidence showing it directly targeted the website to Pennsylvanians or knowingly interacted with residents of Pennsylvania via the website.  Defendant posits that, in lieu of such evidence, "Plaintiff merely assumes that the Court has personal jurisdiction over Humboldt based upon the fact that Humboldt could knowingly interact, or engage in commerce, with residents of Pennsylvania."  ECF No. 11 at 3.  The Court finds this argument to be well-taken.

In an attempt to demonstrate Defendant's contacts with Pennsylvania customers, Plaintiff points to a number of features on Defendant's website, as set forth in a declaration from his attorney, Lawrence H. Fisher, Esq. ("Fisher Decl.").  See Ex. B to Pl.'s Br. Opp. Mot. Dismiss, ECF No. 12-2.  According to Plaintiff, "[t]he online checkout process confirms that Humboldt

Clothing . . . intends for Pennsylvania residents to buy its products." ECF No. 12 at 7. Mr. Fisher attests that:

(i) the Defendant's website populates address fields such that, during the checkout process, Plaintiff does not need to type his entire address because Defendant already possesses this information, Fisher Decl. ¶13;

(ii) the website calculates shipping rates based upon customer addresses, and this would include rates for products shipped to Erie, *id.* ¶14;

(iii) Defendant offers free shipping on all U.S. Orders over $50.00, *id.*, ¶15;

(iv) the website contains language stating that "Humboldt is more than just a place. It represents a culture and a lifestyle, and you don't need to live here to rep the brand. Whether you've just enrolled in school, you've been here all your life, or you're dreaming of redwood adventures from the other side of the world, we're here to send some Humboldt love your way[,]" *id.*, ¶ 16;

(v) Defendant's online store tracks consumers, without any exclusion for Pennsylvania, using at least five cookies,[1] including a cart cookie that remains on consumers' browsers for two weeks and stores information about the contents of their shopping carts, *id.*, ¶ 17; and

(vi) Defendant has a Facebook following of more than 32,000 people, *id.,* ¶3.

In this Court's view, the foregoing facts are insufficient, by themselves, to demonstrate that Defendant has purposely availed itself of the privilege of conducting business activities within this Commonwealth. Both the website's language and Defendant's presence on social media platforms reflect the company's interest in appealing to a customer base outside of California, but they say nothing about Pennsylvania in particular. As for the various website features, they demonstrate, at most, that Defendant was *capable* of doing business with

---

[1] As explained by Plaintiff, "[a] cookie is information saved by your web browser. When you visit a website, the site may place a cookie on your web browser so it can recognize your device in the future. If you return to that site later on, it can read that cookie to remember you from your last visit and keep track of you over time." See ECF No. 12 at 8 (citing Federal Trade Commission, Internet Cookies, https://www.ftc.gov/site-information/privacy-policy/internetcookies (last visited Aug. 20, 2020)).

Pennsylvania customers through its website, not that it intentionally did so. Other courts have found that these types of features, by themselves, are insufficient to establish a basis for exercising *in personam* jurisdiction. *See, e.g.*, *Thermolife Int'l, LLC v. Prosource Performance Prod.*, No. CV152037FLWLHG, 2015 WL 9480023, at *5 (D.N.J. Dec. 29, 2015) (the fact that New Jersey appeared as a shipping option in the drop-down menus or could be manually entered as a shipping option on the defendants' websites was insufficient to show that foreign defendants had specifically targeted New Jersey with their websites); *Harris v. Sportbike Track Gear,* No. CIV.A. 13-6527 JLL, 2015 WL 5648710, at *5-6 (D.N.J. Sept. 24, 2015) (rejecting plaintiff's assertion of personal jurisdiction that was based on, among other things, the defendant's use of "cookies" on its website to keep track of consumer's shopping cart contents, store delivery addresses, and other personal details and defendant's use of social media platforms, including Facebook, Twitter, Instagram, and Youtube, to market its products and solicit business from potential customers throughout the world); *Hershey Co. v. Pagosa Candy Co.*, No. 07-1363, 2008 WL 1730538 *7 (M.D. Pa. Apr. 10, 2008) ("The fact that the [defendant's] web site lists Pennsylvania as one in a list of general shipping destinations, standing alone, does not demonstrate the purposeful availment of doing business in Pennsylvania.").

To the extent that Plaintiff attempts to establish the requisite minimum contacts through his own efforts to utilize Defendant's website and/or through his attorney's efforts to do so, the Court finds that these contacts are also insufficient. As noted, personal jurisdiction must arise from the defendant's own purposeful targeting of the forum state, not the unilateral activities of others. *D'Jamoos*, 566 F.3d at 103. Accordingly, the orchestrated contacts initiated by Plaintiff

and Mr. Fisher are more in the nature of "fortuitous," "random," and "attenuated" contacts discussed in *Toys "R" Us,* 318 F.3d at 454-55, and *Utz Quality Foods,* 2020 WL 4334903 at *2.

Finally, none of the decisions on which Plaintiff relies supports'+ the conclusion, on the basis of the current record, that this Court has specific personal jurisdiction over the Defendant. To the extent Plaintiff relies on *Zippo* and *R.Q.C.* as persuasive authority, the Court finds those decisions relevant but materially distinguishable. As discussed, both cases involved factual records that demonstrated the defendants' substantial sales to customers residing in this Commonwealth. Similarly unavailing is Plaintiff's reliance on *Access Now, Inc. v. Otter Prods., LLC*, 280 F. Supp. 3d 287 (D. Mass. 2017), a case which involved a Title III claim very much like the one being prosecuted here. In *Access Now,* the district court rejected the corporate defendant's Rule 12(b)(2) challenge, but the facts in that case showed that the defendant had conducted two percent of its online sales in the disputed forum state. Thus, the jurisdictional ruling in *Access Now* is very much in line with the rulings in *Zippo, R.Q.C.,* and *Square D.*[2] Plaintiff also cites to *Byrd v. Aaron's, Inc.,* 14 F. Supp. 3d 667 (W.D. Pa. 2014), *vacated in non-relevant part on reconsideration,* 2018 WL 1183207 (W.D. Pa. Mar. 7, 2018). In that case, however, the court exercised *in personam* jurisdiction based upon the "absent co-conspirator" doctrine, a principle which finds no applicability here. For all of these reasons, the Court cannot say, on the basis of the current record, that Plaintiff has satisfied its burden of demonstrating that the Defendant has purposefully availed itself of the privilege of doing business in this Commonwealth.

---

[2] As discussed *infra*, the Court finds the decision in *Access Now* to be persuasive relative to the issue of venue, even though the facts of that case render the court's jurisdictional analysis inapposite.

This is not to say, however, that the complaint should be dismissed at the present time for lack of *in personam* jurisdiction. As noted, courts are directed to permit jurisdictional discovery unless the plaintiff's claim is "clearly frivolous." *Toys "R" Us*, 318 F.3d at 456. That is not the case here, as Plaintiff's factual allegations are sufficient to suggest "with reasonable particularity" the "possible existence of the requisite contacts" between the Defendant and this Commonwealth. *Id*. at 456 (internal quotation mark omitted). Indeed, jurisdictional discovery is "particularly appropriate" where, as here, the defendant is a corporation, and the relevant information is within the defendant's possession and control. *See Metcalfe*, 566 F.3d at 336. Accordingly, the Court will grant Plaintiff leave to conduct jurisdictional discovery. Defendant's motion to dismiss pursuant to Rule 12(b)(2) will be dismissed without prejudice to be reasserted if future developments so warrant.[3]

---

[3] If Plaintiff can establish that Defendant has the requisite "minimum contacts" in Pennsylvania, a presumption will exist that the Court's exercise of personal jurisdiction is constitutional. *See Burger King*, 471 U.S. at 476. Defendant would then have to present "a compelling case that the presence of some other considerations would render jurisdiction unreasonable." *Burger King*, 471 U.S. at 477; *see also Pennzoil Prods. Co. v. Colelli & Associates*, 149 F.3d 197, 207 (3d Cir. 1998) (noting that if minimum contacts are present, then jurisdiction will be unreasonable only in "rare cases"). In evaluating this argument, the Court considers factors such as "the burden on the defendant, the forum State's interest in adjudicating the dispute, the plaintiff's interest in obtaining convenient and effective relief, the interstate judicial system's interest in obtaining the most efficient resolution of controversies, and the procedural and substantive interests of other nations." *O'Connor*, 496 F.3d at 324 (internal quotation marks and citations omitted). Defendant posits that, in this case, the Court's exercising of personal jurisdiction would not comport with principles of fair play and substantial justice because Defendant's two stores are located in California, and requiring the Defendant to travel to this forum in defense of this lawsuit "would not only be inconvenient but oppressive." ECF No. 11 at 4. This argument fails to provide a persuasive basis for dismissal of the litigation at the present time.

As Plaintiff observes, "Pennsylvania has a 'manifest interest in providing effective means of redress' when a foreign corporation reaches into the state and solicits its citizens," *Sandy Lane*, 496 F.3d at 325 (quoting *McGee v. Int'l Life Ins. Co*., 355 U.S. 220, 223 (1957)), and this interest is likely no less strong when solicitations from a foreign entity prove to be discriminatory. Furthermore, notwithstanding the burden that Defendant would experience in having travel to Pennsylvania for this litigation, Plaintiff undoubtedly has a particular need for a convenient forum because of his blindness. At least at this juncture, Defendant has not presented a

## III.  Defendant's Motion to Dismiss Under Fed. R. Civ. P. 12(b)(3)

*A.  Standard of Review*

Defendant alternatively moves to dismiss this case for improper venue.  *See* Fed. R. Civ. P. 12(b)(3).  In ruling on this motion, the Court must accept as true all well-pleaded allegations in the complaint bearing on the venue question, unless they are contradicted by the defendant's affidavits.  *See Bockman v. First Am. Mktg. Corp.*, 459 F. App'x 157, 158 n.1 (3d Cir. 2012) (quoting 5B Charles Alan Wright & Arthur R. Miller, <u>Federal Practice and Procedure</u> §1352, at 324 (3d ed. 2004)).  The Defendant bears the burden of demonstrating improper venue.  *Id*. at 160 (quoting *Myers v. Am. Dental Ass'n*, 695 F.2d 716, 724–25 (3d Cir. 1982)).

*B.  Legal Principles Governing Venue*

Questions of venue are governed by 28 U.S.C. 1391(b), which provides that

> A civil action may be brought in (1) a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located; (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated; or (3) if there is no district in which an action may otherwise be brought as provided in this section, any judicial district in which any defendant is subject to the court's personal jurisdiction with respect to such action.

In this case, Plaintiff purports to invoke subsection (b)(2); thus, the question before the Court is whether a substantial part of the events giving rise to Plaintiff's claim occurred in this judicial district. *See* Compl. ¶30.  Section 1391(b)(2) "favors the defendant in a venue dispute by requiring that the events or omissions supporting a claim be 'substantial[,]' . . . so that a defendant is not haled into a remote district having no real relationship to the dispute." *Cottman Transmission Sys., Inc. v. Martino*, 36 F.3d 291, 294 (3d Cir. 1994).  When evaluating "whether

---

"compelling" argument that would preclude this Court from exercising personal jurisdiction over it in this civil action.

events or omissions giving rise to the [plaintiff's] claims are substantial, it is necessary to look at the nature of the dispute." *Id*. at 295. "The test for determining venue" under § 1391(b)(2) "is not the defendant's 'contacts' with a particular district, but rather the location of those 'events or omissions giving rise to the claim.'" *Id*. at 294. At the same time,

> Section 1391(b) does not require this Court to determine the "best" forum, or "the forum with the most substantial events." In fact, venue may be proper in more than one district. It is necessary "only that a substantial part of the events occurred here."

*Stursberg v. Morrison Sund, Pllc*, No. CV 20-1635-KSM, 2020 WL 7319546, at *16 (E.D. Pa. Dec. 11, 2020) (internal quotation marks and citations omitted). When deciding venue, a court "does not [look] to a single triggering event prompting the action, but to the entire sequence of events underlying the claim." *Id*. (internal quotation marks and citation omitted).

In this case, the complaint is predicated upon an alleged violation of Title III of the ADA resulting from Defendant's failure to make its Website available in a manner compatible with screen reader programs such as the one used by Plaintiff. Title III generally provides that "[n]o individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation." 42 U.S.C.A. § 12182 (West). To establish his claim, Plaintiff must ultimately show that (1) he is disabled, (2) Defendant's online store is a place of "public accommodation" under Title III of the ADA, and (3) it unlawfully discriminated against him on the basis of his disability by (a) failing to make a reasonable modification that was (b) necessary to accommodate his disability. *Matheis v. CSL Plasma, Inc*., 936 F.3d 171, 175 (3d Cir. 2019).

Defendant argues that the event or omission from which the Complaint arose was its alleged failure to install software in California that facilitated access and use of its website by visually disabled persons. But no putative Title III violation could occur unless, by virtue of

these events or omissions, a disabled individual was denied the "full and equal enjoyment" of the website's "goods, services, facilities, privileges, advantages, or accommodations."  Here, that denial allegedly occurred when Plaintiff, from a location in Erie, Pennsylvania, was unable to access Defendant's online store as a result of Defendant's failure to utilize screen reader compatible technology.  In this Court's view, Plaintiff's allegations are sufficient to show that a substantial part of the events and omissions giving rise to his claim occurred in this judicial district.

Notably, at least two federal district courts have reached the same conclusion in cases involving similar claims under Title III of the ADA.  *See, e.g., Access Now,* 280 F. Supp. 3d at 294 (District of Massachusetts was proper venue in visually impaired plaintiff's action against producer of consumer electronics accessories for alleged violation of ADA; although defendant's website may have been created and operated outside of Massachusetts, the plaintiff's attempts to access the website in Massachusetts were part of sequence of events underlying his claim); *Carroll v. FedFinancial Fed. Credit Union,* 324 F. Supp. 3d 658, 664 (E.D. Va. 2018) (holding that, despite the defendant's physical presence in Maryland, venue was properly laid in the Eastern District of Virginia, as that was the location from which the plaintiff had been prevented from acquiring online information about the defendant's services and branch location, and the defendant had maintained its website with the intent of targeting at least some Virginia readers). Applying the reasoning of those decisions to the instant case, the Court concludes that venue lies in this judicial district pursuant to Section 1391(b)(2).

## IV.  Conclusion

Based upon the foregoing reasons, Defendant's motion to dismiss this case based on lack of proper venue, pursuant to Rule 12(b)(3), will be denied.  Defendant's alternative motion to

dismiss the case for lack of personal jurisdiction, pursuant to Rule 12(b)(2), will be denied without prejudice. The latter motion may be reasserted, if so warranted, following a period of jurisdictional discovery.

An appropriate order follows.

*Susan Paradise Baxter*
Susan Paradise Baxter
United States District Judge